The Judges of the United States Court of Appeals for the Eighth Circuit Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this honorable court may now draw near and they will be heard. God save the United States and this honorable court. Thank you. So I'm off. And before we get started, I'm authorized to let you know that Judge Shepard can't be with us today, but he plans to fully participate in all of the cases that are being heard today and and plans to review the oral argument proceedings once they're once they're completed with that, Madam Clerk, could you please call our first case? 19-3752 from the District of South Dakota, United States v. Steven Emery. Thank you, Mr. Tupman. You're first on our agenda this morning. You may proceed when you're ready. Good morning, Your Honors. Can you hear me? We can. Okay, thank you. May it please the court and counsel, Jason Tupman from the Federal Defender Office in North and South Dakota for the appellant, Steven Emery. We are asking this court to reverse the district court's decision to deny Mr. Emery's motion to suppress based upon an illegal search of a package in the custody of U.S., the United States Postal Service, and its contents. The first issue we've briefed and the one that I that is a very factual, but I want to dive into first emphasize a few points is the clear air issue and and in that we we feel that this court can find that extrinsic evidence demonstrates that the district court made a clear error in crediting Roberta Whiting in her testimony that she didn't open the package or that she didn't open the package. She didn't open a toy car box inside the package and the extrinsic evidence I want to focus on is the contemporaneously recorded reports of two law enforcement officers, not one but two, Governments Exhibit 30 and Governments Exhibit 27. Government Exhibit 30 is is a report written by Captain Crow Eagle recorded, recorded that day or the next day, and in that he writes that the toy car box fell out of the box, the package, meaning the box outside, not the toy car with inside. He writes that she removed the toy car from inside the toy car box package, and that is when the toy car falls out with methamphetamine. That is a very different story than the one Roberta Whiting gave indicating that it just fell out when she opened it. It indicates that there's a box inside the box and that can be seen in the exhibits and that she opens that box. Either box she opens is an illegal search. If our items fall out of the mail and there is a container inside that container, regardless of whether the original package is open, it's an illegal search to open the container inside the container. Her testimony was that she saw it on the floor. That contemporaneously recorded report says otherwise. Isn't this really, though, counsel? I mean, to the extent there's conflicting evidence, which is what I hear you saying, you know, isn't the district district court entitled to weigh the evidence, make the credibility findings and and and make findings? And, you know, we're stuck sort of with the credibility findings and the other findings that the district court made. I think United States versus ProCupic is instructive because the nature of the evidence that we have with this conflicting evidence isn't simply testimony. And it isn't simply two people came in and said two different things, which is kind of how the district court framed it up. We have contemporaneously recorded reports and ProCupic was an officer was on a video recorder saying specific reasons for a stop. And then he testified later for a different reason. And the the the explanation was that it was a misstatement and that ultimately failed. And I think, you know, during the examination, the government tried to extract from Agent Crow Eagle that, you know, his his testimony that she removed the package from the box was misstatement. But that that that's not a simple misstep. The detail in which those reports are written, the details there are just fundamentally at odds with one another. Her testimony is fundamentally at odds with the details in the report. And the reports aren't just from one officer. There are two. Moving on to Governor's Exhibit 27. The second officer who also talked to Roberta Whiting contemporaneously said that she saw the baggies inside the package. And again, that's two officers writing two different recording, two different conversations with the same witness right at the time of the events. Both of them indicate that she saw she saw the pack, the box inside the package, which is fundamentally at odds and cannot be explained away with a simple misstatement. You know, the misstatement that that she, you know, misstatement, the officer came in and said it was a Thursday instead of a Tuesday. The facts in those reports had to have come from somewhere. And she is the only source. And I think that written record is analogous to the video recording in ProCupic and makes it really implausible and leaves me with a definite feeling that the judge got this wrong. Or they could, or it could just be sloppy police reports, right? I think, yeah, I think there's there's cases where there could be sloppy police reports. I think that is an issue here. You saw some of that where there, you know, a thing happened on the 4th and the 8th and yesterday, today. But with respect to those facts written in government's Exhibit 27, those are those are assertive facts that had to have come from somewhere and very clearly describe a toy car box that was loose or falling out. And then a toy car box that was opened. And then the package and the toy car come rolling out of the toy car box after it was removed from the toy car box. That is just a different story. And we would be meeting the government more than halfway to suggest that he recorded it wrong or made an error. Certainly, he didn't testify that he recorded it wrong. They never explained away why there's a fundamental inconsistency with the report and Roberta Whitey's testimony. We just know that it was there. I'm moving on, if I may, to the second set of issues. We're also even assuming you credit Roberta Whitey's testimony. This methamphetamine baggy was found on the floor. There are still two distinct searches that are illegal under two separate independent Fourth Amendment protections. There is the removal from inside the box when the Crow Eagle comes. And there's the removal of the contents of the meth or the contents of the baggy, even if it's a slight contents or a slight amount, to field test under both the reasonable expectation of privacy theory and the trespass theory under Jones and Jardines. Counsel, I wanted to focus your attention on the field testing. So, as I recall, you rely a lot on Judge Gorsuch's, then Judge Gorsuch's, opinion in the Tenth Circuit case. But I'm not sure he actually has it right. And we looked into it a little bit. And when you have a postal worker, they are a bailee under state property law. So they have a duty of reasonable care. They have a property interest in it. It's not an exclusive property interest, but the postal workers or the post office gets a property interest. And then you add the common carrier. And in common law, common carriers have the right to refuse things that were dangerous, refuse to carry contraband from one place to another, et cetera. So my question for you is, you know, how would you respond to that? Did you get a chance to look into any of those, into any of those property doctrines at all? Well, yes, yes. And I think that the refusal, I guess, the common carrier of the bailment issue does come up in other places here, too. Just quickly, the common carrier and the bailment issue does come up outside the Florida versus Jardines argument. And then just into the reasonable search and that whether or not the government can profit from its loss in the Wolf versus Collins. And I understand it's not your question. I do think that comes up, but they do have a right to refuse and they didn't refuse the service here. The box was sealed. The box was accepted. The box came open either at Roberta Whiting's doing or some unexplained doing. And it is the government's burden to prove that it came open under some non-negligent, non-intentional means. And I don't think they've met that burden here. But the so if I understand your question correctly is, is they have a they have a duty to inspect as a common carrier if they see something wrong. Kind of like a Jacobson sort of analysis. And I think the key distinction, I think, is, is it's it's a private Jacobson's, a private party case. The box is analogous to a home. And if a government actor takes, you know, accidentally take something out of a home, then puts it back, they would need a warrant to get back into that home. Let me lay pressure on that, though, a little bit, because here's the thing. You said, well, they didn't refuse it. That's right. But they didn't know what was in there, that what was in there was illegal. And so then assuming that there's not clearly erroneous facts. And I know you vehemently disagree with that as to the district court's findings. The white baggy falls out of the out of the box. And at that point, don't they? Isn't it sort of like when you have it in the first place? You're like, oh, my goodness, there's illegal drugs and contraband. Maybe we should check to see if this is illegal drugs and contraband so that we can take care of this. Sort of like the if your client had gone up and said, hey, I have meth in this box. And the common carrier says, no, well, we're not going to take that. We're going to refuse that package. All of that sort of transpired when the baggy came out of the box. What's your response to that? So I think they'd have a right to seize it in search of one and seek a warrant, you know, especially with respect to the field test. They consumed a portion of my client's property. And regardless of that's a very minimal value or no value, that field test required them to consume a property interest. My client had. And that is a trespass to chattels. It may not be one that was worth a whole lot, maybe a smaller value. But when we talk about a trespass, when we talk about a conversion and when we talk about that with a government actor, I think that's where we get into a Jardines and a Jones problem. So I think I guess I that's how I'd answer question is that there is there is still a trespass there. If they would have refused it at the time, I mean, it still would have been returned back to him. And and and had they wanted if they had refused it at that time, at the initial time, had they known it was met, they wouldn't have been able to get into the contents field tested. He still has a possessory interest and he still retained that possessory interest up and up until the time and through the time that they tested the baggy. And with that, I'll reserve the rest of my time for rebuttal. Thank you, Your Honor. All right. Thank you very much, Mr. Elmore. When you're ready to proceed. Thank you, Your Honor. May it please the court. Counsel, my name is Michael Elmore. I'm representing the United States in this issue. I'm here to answer any questions you have. There are really three issues in this appeal, and I'm going to explain why the district court got them right. First issue was the credibility of Whiting. Roberta Whiting was a U.S. Postal Service employee and she was sorting mail. She testified at the suppression hearing first that a baggy fell out of an open package along with a toy car. Second, that she put those items back into the box and moved the box to a back room. And third, that she suspected that the baggy of white crystal-like substance contained drugs. And so she called the police. At the suppression hearing, Judge Moreno, Magistrate Judge Moreno, found her testimony to be credible. And it was consistent with the testimony of Tom Bishop, who was the postmaster here at the post office in Pierre. He was an uninterested party. But we brought the toy car. So this is not what you may be thinking of as a small toy car. It was a large toy car in its original package. And so it was probably 15 inches long and maybe 5 to 7 inches tall. And it was stuck into this post office box that was probably 3 or 4 inches tall. So the toy car did not fit into this box. It was stuck in there. And Tom Bishop said that it was entirely possible that when weight was applied to that box, that the fact that it was overstuffed pushed the content of the box out of it and forced it open. And, Your Honor, the defense also presented a character witness, Charlie Archambeau. She was the defendant's aunt. And she hypothesized that maybe Roberta Whiting had a vendetta against the defendant and that maybe she had done this sort of thing in the past. Counsel, what's your take on what counsel for the appellant describes as inconsistent contemporaneous police reports? Your Honor, there were some inconsistencies. And I would chalk those up to, as the court mentioned, some of that being sloppy police reports and some of it just a legitimate lack of recollection. They were minor inconsistencies. The material issue, the baggie fell out of the open box. She put the box with the contents in the back room. She suspected it was drugs and called the police. Those were the material facts that nobody really disputed. Where was the supervisor when this happened? Exactly how were the contents of the box laid out in the back room? Those were minor inconsistencies. It didn't appear to be anything nefarious, just that people couldn't recall in a completely consistent manner, but nothing that was shocking. And, in fact, Your Honor, Judge Moreno found that this theory that the box was tampered with and maybe the drugs were planted, that that was, in the court's words, a far-fetched stretch and that Charlie Archambault was not credible. It was also consistent with the confession of the defendant and the trafficking materials that were later found in his house. Your Honor, second, the defendant did not have an expectation of privacy in this open package. It's been the position of the government that the contents spilled out and were in plain view. So that requires, first, that there not be a violation in arriving at the place where the evidence was viewed. When law enforcement was summoned, they were brought into the back room of the post office. They had every right to be there. Second, that the incriminating nature was immediately apparent. As I recall the words of Captain Crow Eagle when he arrived in that back room, it was immediately apparent that there was a big bag of meth sitting on the table. And third, that law enforcement had a lawful right of accessing the object. So once the package burst open and the contents were visible for everyone to see, there was not a search because there was no longer a legitimate property interest. And law enforcement or the post office were not obliged to just ignore what they suspected to be contraband sitting in plain view. Why didn't it create a problem when Ms. Whiting put it back in and then pulled it back out, the bag of meth when the officers arrived? Your Honor, my recollection was that Captain Crow Eagle, she said that she put the content back into the package, but then one of the inconsistencies was whether they were laid out on a back table or whether Captain Crow Eagle could see inside the box. But in any event, Your Honor, there was no manipulation by Whiting when she saw those items when they were on the floor. So once they were on the floor, the property interest vanished. And so, Your Honor, law enforcement also had a lawful right to access and extract the baggie from the open package and field test it. And that authority comes from this 1984 case, a Supreme Court case, Jacobson. And in that case, the Supreme Court held that a chemical test that merely discloses whether a substance is illegal and no other privately held fact does not compromise a legitimate privacy interest. In that case, there was a FedEx employee who observed the damaged package and she suspected that the package contained drugs and called DEA. They field tested the substance and the court said that the expectation of privacy is lost once a private search occurs. Now, counsel, I think it may be a little dangerous to place too much weight on Jacobson because the property-based Fourth Amendment standard or inquiry had been lost to the Supreme Court for about 50, 60 years. And so that was revived in Jones and Jardines. And I read your brief as mostly relying on Jacobson, as you do here, but not necessarily giving us a way to look at this from a property-based point of view under Jardines. What's your response to that? Your Honor, with Jones and Jardines, and this was the position of the government that was agreed upon by the district court and then briefed in the appeal, in my mind, Jones and Jardines are dealing with the canine search on the curtilage of a home or whether a GPS can be planted on a car. But with Jacobson, the testing of a suspected baggie of drugs, it's clear that law enforcement is authorized to do that, and that's still good law. What do you make of Judge Gorsuch, then Judge Gorsuch's, I mean, it's ticked off, but he says he thinks that Jacobson would have come out differently under a property-based theory of the Fourth Amendment. I don't agree with that, Your Honor. Law enforcement observed a baggie, in Captain Crow Eagle's words, a big baggie of meth that was immediately apparent to him, and that because of Jacobson, he had the right to field test it to confirm what he already believed to be true. And on that note, Your Honor, it was a foregone conclusion that the baggie contained drugs. The field test just confirmed what they already knew to be true. And even if that's not the case, nobody here at the Post Office or the Rosebud Sioux Tribe Law Enforcement Services were going to ignore the baggie of crystal-like substance, even without a field test. So the inevitable discovery rule does apply. I think it was the testimony of Officer Antman, the drug task force officer, that they would have found the defendant who was just a short distance away in his pickup truck. He was arrested. There was more drug materials found in plain view in his truck. The observations at the Post Office and in the truck resulted in the search of his home, which found the trafficking materials from Cason, New Mexico, where this package had arrived from. He would have gone to jail. He would have been interviewed. He would have confessed. All of that would have happened whether there was a field test or not. Finally, Your Honor, the exclusionary rule does not apply in this case. The actions of law enforcement and the Post Office were legal and proper. Nobody violated the defendant's constitutional rights. No one demonstrated reckless disregard for his constitutional rights. So the exclusionary rule does not apply. With that, Your Honor, the government is asking the court to affirm the district court's denial of the motion to suppress, and I have nothing more. All right. Thank you, Mr. Elmore. Mr. Tutman, it looks like we're back to you, and I know you have about, I think, two minutes and 44 seconds here of rebuttal time, so please proceed when you're ready. Sure. Thank you. Real quick, there was a point made by Mr. Elmore. There was some discrepancy in whether she put items back in the box. On page 33 of the transcript, there was a question, where did you place those items back in the box? I think it was pretty clear she placed them back in the box. Moving on to there at the end, he brought up inevitable discovery, the exclusionary rule. In talking about the exclusionary rule, Mr. Elmore mentioned that the home search would have happened, the statements would have happened, and this on, you know, and everything after that. But the key point, and if we get to a point where there's an illegal search established and there should have been a warrant, the methamphetamine would not have been gotten by a warrant for any other means other than if they had sought a warrant to get the methamphetamine. And so whether or not it was inevitable that a statement would have happened or a search of a home would have happened based on maybe an arguably unlawful search and seizure, the warrant, if there needs to be a warrant for the meth, the only way you can prove inevitability of getting a warrant for the meth is if somebody had actually sought warrant for the meth. And, you know, if you keep that interpretation and say, well, there certainly would have been probable cause, well then you've turned the warrant requirement into a probable cause requirement. And certainly if the court finds that there was a warrant necessary for the meth, then the meth itself is certainly within the exclusionary rule. And that alone is reversible error. It would be it's, it's, you know, that alone without getting to what happens after that, that that methamphetamine certainly was the best physical evidence of distribution here. And, and if that, if that should be suppressed, there's reversible error there. You may have noticed that I'm really interested in the field testing. I think that's by far the hardest issue in the case and, and opposing counsel brought up Jacobson and there's that old rule. Shearson, I think is where it comes from, where only the Supreme court can overrule its past opinions. And so once you get back to the, once you get past the private public distinction, which I know is an issue in this case, but now we're just focusing on the field testing. Why doesn't Jacobson control on that issue? Sure. That's a great question. So Jacobson much like justice Scalia distinguished Jacobson in Florida versus Jardines, Jacobson is a cat's based holding and, and the I'm sorry, I'm out of time. Can I finish my response? Please finish. I'm very interested in the answer to this question. It is a cat's based holding and, and it is not a holding based on a trespass. The court makes no finding with respect to whether or not that was a trespass in Jacobson. And, and that, that means of a fourth member protection is not analyzed. So if the holding is, is, is that, that, that individual, the defendant Jacobson didn't have a, a, a, a prop, a property interest, the fourth amendment was not property interest. Boy, I'm confusing the terms, but if they didn't have a reasonable expectation of privacy, there is no holding that he had a property interest, whether he did or didn't have a property interest. And, and so that, that isn't a reversing a holding that is applying a separate doctrine that you mentioned it was lost to us for 50 years or whatever the term was, but let's say, let's say judge Strauss, if I may. Yes, please. Let's say you're right there, but is this the sort of situation that the exclusionary rules should apply? Even if what you're saying is correct, you're, I mean, the exclusionary rule is designed to determine police misconduct. And here you have police looking at probably years of training based on a 1984 Supreme court case. That's not been overturned, basically doing exactly what the court approved. And things may have changed in Washington, DC and the Supreme court, but certainly not in tribal officer training school or a state police academies. Why should we apply the exclusionary rule? Even if you're correct in the law. Yeah. So Florida versus Jardines and Jones are, if I recall 2010 post 2010, pre 2015, I'm a mistake in the years, but you know, particular Jones, Jones found that the police trespassed by nearly putting a device on, on a, on a vehicle. And that was sufficient for suppression. And if you can have a fourth of an interest in that slight of a trespass trespass, no matter how slight it is clear from that holding, that consuming even a slight amount of property, I'd be at whatever meth was required for, for the field test is also clear from that holding. So I guess you do have Jacobson, but you have Jones and you have Jardines afterward and Jones and Jardines. I mean, as justice Scalia said, the, the nice thing about the property based test is that it makes the easy cases easy. And this was, this was a conversion. And I think that's an easy case for a trespass. And thank you for all that time. I terribly interesting issues. Thank you. Thank you. Did you have anything else? No, thank you. Okay. Well, thanks to both council for really excellent oral arguments. The, the case has been submitted and we will issue an opinion in due course, madam clerk.